UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM PERMENTER,

                Petitioner,

vs.                                Case No. 3:17-cv-813-J-39JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                Respondents.

_____

## ORDER

### I. INTRODUCTION

Through a Petition for Writ of Habeas Corpus (Petition) (Doc. 1) pursuant to 28 U.S.C. § 2254, William Permenter, an inmate of the Florida penal system, challenges his state court (Duval County) conviction for two counts (counts one and two) of lewd or lascivious molestation, two counts (counts six and seven) of sale, distribution, or showing of obscene materials to minors, and three counts (counts eight, nine, and ten) of sale/providing alcoholic beverages to a person under age twenty-one. In support of the Petition, Petitioner filed a Memorandum of Law in Support of § 2254 Petition for Writ of Habeas Corpus (Memorandum) (Doc. 2).

Respondents addressed the grounds of the Petition in an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 17).[1] Petitioner elected to file a Reply to Response to Petition for a Writ of Habeas Corpus (Doc. 18). The Petition is timely filed. See Response at 7.

## II. EVIDENTIARY HEARING

Petitioner raises three grounds in the Petition and seeks an evidentiary hearing on the second and third grounds. Petition at 15; Memorandum at 9. It is Petitioner's burden to establish a need for an evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012). The Court finds no need for an evidentiary hearing as the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief. As such, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir.

---

[1] The Court hereinafter refers to the Exhibits to Answer to Petition for Writ of Habeas Corpus (Doc. 17) as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced.

2003), <u>cert. denied</u>, 541 U.S. 1034 (2004). Therefore, Petitioner
is not entitled to an evidentiary hearing. <u>Schriro v. Landrigan</u>,
550 U.S. 465, 474 (2007).

### III. CLAIMS OF PETITION

Three grounds are raised in the Petition, two of which are
unexhausted: (1) the trial court erred in admitting statements
recorded during a call initiated by detectives after Petitioner
had invoked his right to counsel (exhausted); (2) the ineffective
assistance of trial counsel for misadvising Petitioner with
respect to a plea offer made during the pre-trial phase, resulting
in the loss of a favorable plea (unexhausted); and, (3) the
ineffective assistance of trial counsel for improperly relying
upon a defense strategy which was legally inadmissible as a matter
of law (unexhausted). Petition at 5-10.

### IV. In Custody

Petitioner does not satisfy the "in custody" requirement of
28 U.S.C. § 2254(a) as to counts six, seven, eight, nine, and ten
of the conviction. <u>See</u> Response at 8-9. The sentences for these
offenses expired prior to the filing of his federal Petition.
However, he meets the "in custody" requirement as to counts one
and two of the Petition. <u>Id</u>. Since the jury returned a not
guilty verdict on counts four and five and the state withdrew count

three, the only convictions open to collateral attack in this federal habeas proceeding are counts one and two.

## V. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254. This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam). The AEDPA statute: "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." Id. Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (per curiam)), petition for cert. filed, (U.S. July 30, 2019) (No. 19-5438).

Applying the statute as amended by AEDPA, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019).

4

Thus, in order to obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders, 911 F.3d at 1351. As noted in Richter, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

In undertaking its review, this Court is not obliged "to flyspeck the state court order or grade it." Meders, 911 F.3d at 1349. Indeed, specificity and thoroughness of the state court decision is not required; even if the state court fails to provide rationale or reasoning, AEDPA deference is due "absent a conspicuous misapplication of Supreme Court precedent." Id. at 1350 (citation and quotation marks omitted).

Of importance, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). But, this presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the

distinction between a pure question of fact from a mixed question of law and fact), <u>cert</u>. <u>denied</u>, 573 U.S. 906 (2014).

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Once a claim is adjudicated in state court and a prisoner seeks relief in the federal court system, AEDPA's formidable barrier to habeas relief comes into play, and it is very difficult for a petitioner to prevail under this stringent standard. As such, state-court judgments will not easily be set aside once the Court employs this highly deferential standard that is intentionally difficult to meet. <u>See</u> <u>Richter</u>, 562 U.S. at 102. Although AEDPA does not impose a complete bar to issuing a writ, it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. <u>Id</u>. In sum, application of the standard set forth in 28 U.S.C. § 2254(d) ensures that habeas corpus is a guard against extreme malfunctions

in the state criminal justice systems, and not a mechanism for ordinary error correction. _Richter_, 562 U.S. at 102-103 (citation and quotation marks omitted).

## VI.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises claims of ineffective assistance of trial counsel. To prevail on a Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in _Strickland v. Washington_, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). _See_ _Brewster v. Hetzel_, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

In order to obtain habeas relief, a counsel's errors must be so great that they adversely affect the defense. In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." _Strickland_, 466 U.S. at 694.

The standard created by _Strickland_ is a highly deferential standard, requiring a most deferential review of counsel's decisions. _Richter_, 562 U.S. at 105. Not only is there the "_Strickland_ mandated one layer of deference to the decisions of

trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision.  <u>Nance</u>, 922 F.3d at 1303.  Thus,

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." <u>Johnson v. Sec'y, DOC</u>, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

<u>Nance</u>, 922 F.3d at 1303.

### VII.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Exhaustion and Procedural Default

Petitioner admits he did not exhaust grounds two and three of the Petition.  Petition at 7, 9.  He concedes these claims should have been raised through a post-conviction collateral attack, but he claims his procedural default should be excused based on the narrow exception under <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), asserting he meets the exception.  <u>Id</u>.  The record demonstrates Petitioner did not have counsel for his post-conviction Rule 3.850 motion.  Ex. P.

In order to overcome his default, Petitioner must demonstrate that the underlying ineffectiveness claims are substantial.  The Supreme Court, in <u>Martinez</u>, 566 U.S. at 14 (citation omitted),

8

advised: "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  As discussed in the merits analysis that follows, the ineffectiveness claims raised in grounds two and three lack merit.  Therefore, Petitioner has not shown he can satisfy an exception to the procedural bar.  A discussion follows.

In ground two, Petitioner claims trial counsel was constitutionally ineffective for misadvising Petitioner with respect to a plea offer made during the pre-trial phase, resulting in the loss of a favorable plea.  Petition at 7.  The record demonstrates the following.  Detectives interviewed Petitioner on April 26, 2012 in the Sex Crimes Division.  Ex. A at 4.  Briefly,

> The 58 year old suspect has been involved in the 9 year old victim and 12 year old victim['s] lives since birth and they refer to him as "Uncle Mike."  While spending the night with the suspect at his residence, the suspect provided the victims and their 16 year old friend with numerous alcoholic drinks.  After getting the juvenile girls intoxicated the suspect exposed his penis, had the girls touch his penis, and had the victims watch pornographic movies with him.  The victim's mother conducted a controlled phone call with the suspect and the suspect admitted to providing them with alcohol, they were looking at the pornography, they could have seen his penis but denied the victims touching his penis.

> The suspect came to the Police Memorial
> Building for an interview and was read his
> United States Constitutional Rights. The
> suspect admitted to all the victims drinking
> "wine coolers" at his house and that the
> victims were watching his "adult videos."
>
> The suspect invoked his right to remain silent
> before discussing further details of the
> allegations made by the victims and the
> interview was concluded.

Id.

The arrest report also states, after the detective left the interview room, Petitioner called the mother of two victims. Id. at 5. The detective observed Petitioner making phone calls. Id. The detective spoke to the mother, and she told the detective Petitioner admitted to doing everything to the girls. Id. The detective arrested Petitioner. Id.

In a ten-count information, Petitioner was charged with three counts of lewd or lascivious molestation; two counts of lewd or lascivious exhibition; two counts of sale, distribution, or showing of obscene material to minors; and three counts of sale/providing alcoholic beverages to a person under age twenty-one.[2] Id. at 12-13. The state provided a notice of other crimes, wrongs or acts evidence, referencing a February 7, 1986 conviction for lewd, lascivious, or indecent assault or act upon or in the

---

[2] The state eventually withdrew count three. Ex. D at 205-206.

presence of a child, for which Petitioner had pled guilty. Id. at 33.

During a pre-trial hearing on October 10, 2012, Petitioner declared his innocence and told the court God was on his side. Id. at 166-168. At a subsequent pre-trial proceeding, on May 2, 2013, the state announced there were no offers on the table. Ex. B at 229. The court found the testimony concerning the prior conviction did not meet Williams Rule criteria and excluded it. Id. at 226-27.

On May 8, 2013, the date of trial, defense counsel, Ms. Mary Hickson, announced the state had made an offer to Petitioner. Ex. D at 177. The state said it would drop the three most serious charges for lewd or lascivious molestation (counts one, two, and three) and let Petitioner plead to the remaining counts for a sentence of five years followed by five years of probation or plead to the court for a range of twenty-two months to twenty-two years.[3] Id. Ms. Hickson announced Petitioner rejected the state's offer. Id. Upon inquiry, Petitioner assured the court that counsel had answered his questions concerning the state's offer. Id. The court warned Petitioner if he were to go to trial on the more serious charges, he would be facing twenty-five years to life plus

_____

[3] Counts one and two are life felonies. Ex. D at 178.

probation for the rest of his life. Id. at 179. Petitioner assured the court he understood this, but he was rejecting the offer and said, "I made them a counter offer." Id. Upon inquiry by the court, Ms. Hickson said Petitioner's counter offer was for time served, which was rejected by the state. Id. at 180. Petitioner assured the court he wanted to reject the state's offer. Id. at 180-82.

In support of ground two, Petitioner urges this Court to conclude counsel was ineffective for misadvising Petitioner that she had developed a viable theory of defense premised upon the alleged victims' motive to lie. Petition at 7. Petitioner surmises that but for counsel's incorrect advice as to the availability of the defense, he would have accepted the plea offer. Id. The Court is not convinced of either of these contentions. Firstly, it was a viable theory of defense, although the court was ultimately not convinced that the evidence adequately supported the theory. Secondly, the record shows Petitioner was not inclined to accept the state's plea offer, as evidenced by his repeated assertions of innocence, his rejection of his counsel's sage advice to take the plea offer, his outright dismissal of the state's very favorable plea offer, and his decision to make a counter offer for time served.

Some background is needed to provide context for these two grounds for relief.  The state filed a motion in limine asking the court to prohibit any and all argument, testimony or evidence relating to the sexual activity between M.H. (a victim) and C.W. (a boy) and between B.B. and B.H. (a boy).[4]  Ex. A at 60.  The motion states, on February 27, 2012, M.H. disclosed she had engaged in sexual intercourse with C.W. (age fifteen) in the beginning of January 2012 at the residence of M.H.  Id.  Of import, the Information charged Petitioner with events occurring between December 1, 2011 and February 28, 2012.  Id. at 12-13.  Detectives interviewed Petitioner on April 26, 2012.  Id. at 4.

The defense opposed the state's motion.  Ex. D at 183.  The prosecutor told the court that on February 27, 2012 ("the date prior to this particular case coming about on February 28th"), the family discovered that M.H. (one of the victims) had a sexual encounter with a boy, C.W.  Id.  The prosecutor said, at first, M.H. alleged C.W. used sexual force with a knife, but then M.H. changed her allegation to say force was not used, but she did not necessarily want to have sex with C.W.  Id. at 184.  The prosecutor asked that the victim's prior sexual activity with a boyfriend be deemed inadmissible.  Id. at 184-85.  The prosecutor explained,

---

[4] The court will refer to the minors in this case by initials.

"the defense wants to use this type of information to show a motive involving M.H." and her desire "to potentially avoid getting in trouble with her parents." Id. at 185. The state submitted that M.H. did not report what had occurred with the defendant, only K.H. (another victim) informed her mother. Id.

Ms. Hickson responded that this matter goes to Petitioner's confrontation rights as well as his defense. Id. The court said it is a rape shield statute and it goes to whether the information is relevant to something the defense is trying to prove. Id. at 186. Ms. Hickson asserted the allegations against Petitioner would not have come out but for the allegations that C.W. had raped M.H. Id. The prosecutor again argued that the little sister, K.H., disclosed, not M.H. Id. at 187. Ms. Hickson explained that K.H. said there was an incident involving the young ladies with some boys. Id. The younger sister, K.H., saw her mother crying and she thought it was due to M.H.'s sexual act with the boy. Id. at 188. After the police were called about the boy, "they learn about the allegation regarding [Petitioner]." Id.[5] The father contacted the detective and told her about Petitioner. Id.

---

[5] Ms. Hickson said K.H. disclosed to her mother about the boys, and thereafter, disclosed incidents with Petitioner to the parents. Ex. D at 189.

Ms. Hickson stated there was no evidence that K.H. considered herself possibly in trouble with her parents. Id. at 191. Ms. Hickson confirmed that just K.H. disclosed to the parents, and M.H. never discussed with her parents what happened with Petitioner. Id. at 191-92. The court said:

> I am going through this is [sic] detail because I have to know how much this relates to your theory that this past sexual episode of these boys and [sic] would be the motivating factor or could be the motivating factor to disclose this information, that they are alleging against your client, all right?
>
> I can see where it might be a motivating factor. If that is the situation, then I think the rape shield statute would not prohibit you getting into that. But I am not sure yet how I am connecting all the dots of your theory.

Id. at 192-93.

Ms. Hickson said she was unsure when M.H. had contact with K.H. regarding the allegations made against the boys, and furthermore, the father "indicated that Mr. Permenter, actually, knew about the sexual act between [M.H.] and the boys, as well." Id.

The court concluded K.H. was never in trouble for what had happened, and the court could not see how what happened to M.H. as a motivating force in K.H.'s disclosure of allegations against Petitioner. Id. at 193-94. In order to persuade the court of her

position, Ms. Hickson offered one more suggestion: that perhaps K.H. or M.H believed Petitioner disclosed the information to the mother, and that was the reason why the mother was crying at that point; however, Ms. Hickson had no evidence to support that conjecture other than the father indicated in the deposition that Petitioner knew about the sexual allegations against the young boy. Id. at 196.

The court granted the state's motion in limine subject to being revisited if evidence or testimony shows "this might be a motivating factor" with respect to blaming Petitioner for disclosing information. Id. Finally, the court stated the danger of unfair prejudice would greatly outweigh the probative value that the evidence would bring towards that issue for the defense. Id. at 197.

In ground three, Petitioner claims he received the ineffective assistance of trial counsel for improperly relying upon a defense strategy which was "**legally inadmissible as a matter of law.**" Petition at 8 (emphasis added). In the supporting facts, "Petitioner avers that Counsel was ineffective for developing this sole defense strategy and advising him of its existence, in light of the fact that the current state of the law in Florida precluded its introduction." Id.

Interestingly, Petitioner presented an entirely different view of defense counsel in his state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel for failure to raise an issue regarding trial court error in excluding evidence and testimony of alleged victims' allegations of sexual abuse under the Rape Shield Statute which did not apply to Petitioner's offenses and denied Petitioner the right to confront witnesses and present a full and fair defense. Ex. L at 6. In the state habeas petition, Petitioner praised defense counsel for her reliance on the case law within State v. Adderly, 803 So. 2d 760 (Fla. 3rd DCA 2001) (relying on Lewis v. State, 591 So. 2d 922, 925 n.4 (Fla. 1991) (finding the Rape Shield Statute was expressly applicable only to prosecutions for sexual battery under § 794.011, Fla. Stat., until amended)), and for basing her argument on Petitioner's confrontation rights. Ex. L at 9. Additionally, Petitioner praised counsel for re-raising the argument in a motion for new trial. Id. at 10. See Ex. A at 124 ("[t]he court erred in granting the State's Second Motion in Limine regarding the victim's prior sexual conduct"). See also Ex. A at 141; Ex. B at 238.

Ground three is without merit because the defense strategy for trial was not "legally inadmissible as a matter of law." See Response at 37. Indeed, Petitioner was not charged with any crime

under § 794.011, Fla. Stat.  Instead, he was charged with sexual misconduct under § 800.04(5)(b), Fla. Stat., § 800.04(7)(b), Fla. Stat, and § 847.0133, Fla. Stat.  Ex. A at 12.  Effective July 1, 2016, long after Petitioner's trial, the Rape Shield Statute was amended to include prosecutions under § 800.04, Fla. Stat.

Furthermore, counsel's performance was not deficient for opposing the state's motion in limine on the basis counsel presented to the court.  Indeed, the trial judge stated he thought defense counsel was right "on the general principal of the law[.]"  Ex. D at 194.  Ms. Hickson effectively argued her position, and although the court granted the state's motion, the court left the matter open to be revisited if evidence or testimony showed a motivating factor.  Id. at 196.

As to Petitioner's claim that counsel misadvised him with respect to the plea offer, the Court finds the claim raised in ground two is without merit.  Although Petitioner blames counsel for his rejection of the state's plea offer, Petitioner states in his Memorandum at 14, defense counsel advised him: "You'd better take this plea!  You'd better take this plea!"  Although defense counsel strongly advised Petitioner to take the plea offer, Petitioner did not heed counsel's advice.  Instead, Petitioner made a counter offer to the state.  Ex. D at 179-80.  The state rejected Petitioner's counter offer for time served.  Id. at 180.

The trial court satisfied itself it was Petitioner's decision to reject the very favorable offer presented to him by the state. Ex. D at 177-82. The court took the time to make sure Petitioner was well informed of the consequences of his decision. Indeed, when Petitioner stated he had made a counter offer, the court continued its inquiry to make sure Petitioner had not changed his mind.

Of note, pre-trial, Petitioner professed his innocence and said God was on his side. See Reply at 14 ("he knew he was innocent of the allegations lodged against him"). He testified at trial. The jury returned a verdict of not guilty as to the charges of lewd or lascivious exhibition as charged in counts four and five (victims K.H. and M.H., respectively), so the defense strategy was successful in this regard. Ex. A at 115-16. Also, immediately prior to the start of the trial, the state withdrew count three of the Information, the charge of lewd and lascivious molestation of victim M.H., the older sister who had sex with a fifteen-year-old boy. Ex. D at 205-206. Although defense counsel may not have prevailed in her efforts to oppose the state's motion in limine, the only successful counts raised against Petitioner concerning victim M.H. were the charges concerning showing obscene materials to minors (count seven) and providing alcoholic beverages (count nine), offenses Petitioner generally admitted to

during his April 26, 2012 interview with the detective. Ex. A at 4. In all other respects, the defense was successful countering the charges against Petitioner concerning the victim M.H.

Apparently, the jury was persuaded by the testimony of K.H., the younger sister, that lewd or lascivious molestation occurred as charged in the Information, as the jury returned verdicts of guilty as to counts one and two. Id. at 113-14. At sentencing and re-sentencing, Petitioner professed his innocence of lewd or lascivious conduct and any sexual touching of K.H. Ex. B at 246-47; Ex. G at 34.

Notably, "Strickland's two-part inquiry applies to ineffective assistance of counsel claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). '[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.'" West v. Sec'y of Fla. Dep't of Corr., No. 3:16-CV-785-J-32MCR, 2019 WL 3752914, at *22 (M.D. Fla. Aug. 8, 2019) (quoting Missouri v. Frye, 566 U.S. 134, 145 (2012)). The applicable law provides:

> "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Padilla v. Kentucky, 559 U.S. ----, 130 S. Ct. 1473, 1486, 176 L.Ed.2d 284 (2010). In the recent case of Missouri v. Frye, 566 U.S. ----, No. 10-444,

20

--- U.S. ----, ----, 132 S. Ct. 1399, 2012 WL 932020, *8 (Mar. 21, 2012), the Supreme Court said: "[A]s a general rule, defense counsel has the duty to communicate formal [plea] offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." If an attorney allows such an offer "to expire without advising the defendant or allowing him to consider it, defense counsel d[oes] not render the effective assistance the Constitution requires." Id.

The Strickland framework applies to advice regarding whether to plead guilty. Hill v. Lockhart 474 U.S. 52, 57-59 (1985). See also Premo v. Moore, --- U.S. ----, 131 S. Ct. 733, 743, 178 L.Ed.2d 649 (2011); Padilla v. Kentucky, --- U.S. ----, 130 S. Ct. 1473, 1480-81 (2010)("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L.Ed.2d 763 (1970)).

The analysis of Strickland's performance prong is the same, but instead of focusing on the fairness of the trial, the prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. Thus, when an ineffective assistance of counsel claim concerns the rejection of an offered plea agreement, the defendant "'must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would [not] have insisted on going to trial.'" Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (quoting Hill v. Lockhart, 474 U.S. at 58, 106 S. Ct. at 370) (alterations in original).

Macli v. United States, No. 11-CR-20587, 2018 WL 7141867, at *9 (S.D. Fla. Nov. 5, 2018), report and recommendation adopted by No. 16-23544-CIV, 2019 WL 369278 (S.D. Fla. Jan. 30, 2019), certificate of appealability denied, No. 19-11174-K, 2019 WL 4747995 (11th Cir. July 19, 2019).

The record shows defense counsel informed Petitioner of the plea offer and strongly advised Petitioner to take the offer. Petitioner declined and made a counter offer. Counsel did not err in attempting to oppose the state's motion in limine, and she was obviously aware of the limitations the evidence presented because K.H., not M.H., disclosed the events. Defense counsel presented a well-supported argument to the court that the state's motion in limine should not be granted. "[C]ounsel's strategy of seeking admission of M.H.'s sexual encounter with another minor as demonstrating motive to falsely accuse Petitioner *did not* fall outside the wide range of reasonable professional assistance." Response at 39. And even though counsel did not persuade the trial court to deny the state's motion in limine, immediately prior to the start of the trial, the state decided to withdraw the lewd and lascivious conduct count concerning the victim M.H., a very positive outcome for the defense. Also, at the conclusion of the trial, the jury returned a verdict for Petitioner on two counts of lewd or lascivious exhibition. Again, the defense was quite

successful in countering three of the more serious charges. Defense counsel was not constitutionally deficient under these circumstances.

In sum, Ms. Hickson advised Petitioner of the plea offer and recommended he accept the state's offer. Petitioner rejected the plea offer and made his counter offer. Of import, there was no unreasonable misunderstanding of the law by counsel with respect to the state's motion in limine. It was problematic that M.H. did not make the disclosure. Ms. Hickson understood the principal of the law, and she made a compelling argument that the state's motion should be denied, but Ms. Hickson was unable to convince the court that what happened to M.H. was a motivating force in K.H.'s disclosure of allegations against Petitioner based on the evidence and testimony.

Not only was there no deficient performance, there was no prejudice:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, 566 U.S. 156, 164 (2012).

Petitioner received competent advice, and the outcome of the plea process would not have been any different because Petitioner decided to make a counter offer. In no uncertain terms, defense counsel advised Petitioner to take the state's offer. Counsel's performance did not affect the outcome of the plea process as evidenced by Petitioner's decision to make the counter offer.

Petitioner has neither shown deficient performance nor prejudice under the Strickland standard of review. Thus, Petitioner is not entitled to habeas relief on grounds two and three of the Petition.

### B. Ground One

In ground one of the Petition, Petitioner claims the trial court erred in admitting statements recorded during a call initiated by detectives after Petitioner invoked his right to counsel in violation of the Fifth and Sixth Amendments to the United States Constitution. Petition at 5. Petitioner exhausted this ground by presenting it in Issue III of his direct appeal. Ex. H at i, 31-36. The First District Court of Appeal (1st DCA) per curiam affirmed. Ex. K.

Petitioner contends the state court's adjudication of this claim was based upon an unreasonable application of clearly

established federal law as determined by the Supreme Court of the United States. Memorandum at 10. Petitioner asserts Detective Maynard unlawfully enlisted an agent to contact Petitioner when he had already invoked his Fifth Amendment right to remain silent and his Sixth Amendment right to have counsel pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Memorandum at 11. Petitioner avers that law enforcement employed a deliberate tactic to circumvent the protections of Miranda to secure his confession. Id.

As background, the record shows the defense filed a motion in limine to prohibit the state from introducing any evidence relating to or testimony of any recorded statements by the Petitioner while in the interview room of the Jacksonville Sheriff's Office (JSO) during a phone call to Jennifer Holden (the mother of two of the victims). Ex. A at 64-66. The motion mentioned Petitioner was interviewed by Detective Maynard on April 26, 2012, and the interview was concluded as a result of Petitioner invoking his right to counsel. Id. at 64. After the detective left the room, Petitioner repeatedly called Ms. Holden from the interview room and she did not answer the calls. Id. Detective Maynard called Ms. Holden and confirmed Petitioner was calling her on her cell phone. Id. Detective Maynard advised Ms. Holden it was "ok for her to answer the phone because the suspect was being recorded in the interview." Id. Ms. Holden called Petitioner back, and

Petitioner made some admissions during the phone conversation. Id.

The thrust of Petitioner's argument is that Ms. Holden became an agent of the JSO after Detective Maynard told her it was alright for her to answer the phone because Petitioner was being recorded. Id. at 65. In the motion, Petitioner raised his Fifth Amendment privilege against compelled self-incrimination by the actions on the part of the police that the police should know were reasonably likely to illicit an incriminating response. Id. Petitioner claimed the right to counsel had attached and there had been no valid waiver. Id.

The trial court heard argument on the defense motion in limine. Ex. D at 197. Ms. Hickson set forth the issue for the court:

> MS. HICKSON: During Mr. Permenter's interview with Detective Maynard he invoked his right to counsel. She leaves the room and tells him she [is] going to do some paperwork. During that period of time the video shows my client texting on the phone and making telephone calls.
>
> It is discovered the telephone calls are being made to the victim's mother, Jennifer Holden, as well as a text message was sent to [M.H.]. Your Honor, at one point during the interview my client receives a phone call from Jennifer Holden.
>
> But he receives that phone call after Detective Maynard speaks to Ms. Holden about

the telephone call and tells her it is okay to
answer the phone, because my client is being
recorded in the interview room.

Id. at 197-98.

Defense counsel advised the court that Ms. Holden had
previously done a controlled phone call in which the detective
asked Ms. Holden to try and get information from Petitioner. Id.
at 199. Ms. Hickson argued Ms. Holden became an agent for
Detective Maynard because she was advised Petitioner was in the
interview room being recorded, Ms. Holden called Petitioner, and
she tried to get a confession from Petitioner. Id.

The state countered the defense argument by asserting there
is no expectation of privacy in an interrogation room of a police
station. Id. at 200. The state explained that Petitioner
initiated contact with Ms. Holden by calling her on her cell phone,
and Detective Maynard, realizing that Ms. Holden was being called
by Petitioner, called Ms. Holden to tell her it is okay to speak
with Petitioner because everything was being recorded. Id. 200-
201. Finally, the state argued: "[a]t no point in time did
Detective Maynard tell or orchestrate or make Jennifer Holden an
agent of the police department[.]" Id. at 201. Detective Maynard
did not suggest to Ms. Holden what should be said or asked. Id.

Upon inquiry, defense counsel told the court that Detective
Maynard had provided no instructions to the victim's mother as to

what should or should not be said to Petitioner. Id. at 204. After hearing both sides, the court denied the motion in limine, finding no evidence Ms. Holden was acting as an agent for law enforcement at that point in time. Id. at 205.

To the extent Fifth and Sixth Amendment claims were raised and addressed, the adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on this ground because the 1st DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, ground one is due to be denied.

In his Memorandum at 11-12, Petitioner references the deposition of Detective Maynard. Appendix to Memorandum, Appendix M (Doc. 3-13). This Court is limited in its review to the evidence that was before the 1st DCA. See Response at 22-23. The deposition was not before the 1st DCA; therefore, this Court will not rely on the contents of the deposition in undertaking its review. Even without Detective Maynard's deposition, the trial court and the 1st DCA were certainly aware of the fact Ms. Holden

had previously been a party to a controlled phone call as there was evidence of such in the record and defense counsel advised the trial court of such.  Ex. A at 4; Ex. D at 199.

At trial, Detective Maynard testified that after she left the interview room, she observed Petitioner attempting to make phone calls.  Ex. D at 332-33.  Detective Maynard called the Holden household and spoke with M.H., one of the victims, and the victim was terrified because Petitioner kept calling the house.  Id. at 333.  Detective Maynard assured the victim she was safe because Petitioner was at the police station.  Id.  Detective Maynard then called Ms. Holden's cell phone number and spoke to her.  Id.  Ms. Holden told the detective Petitioner was calling her cell phone number as well.  Id.  Detective Maynard explained her response: "I advised her that due to the room being recorded that she could feel comfortable answering the phone call from the suspect because what was said was being recorded through the interview room."  Id. Detective Maynard further stated she did not tell Ms. Holden to make any type of statements or questions to Petitioner.  Id.

Upon review, the record that was before the 1st DCA does not show Detective Maynard directed Ms. Holden to call Petitioner, nor does it show Detective Maynard directed Ms. Holden to ask certain questions or to make any sort of inquiry of Petitioner.  The factual finding of the trial court that Ms. Holden was not acting

as an agent for law enforcement when she made her phone call to Petitioner is not unreasonable. Thus, the state court did not make an unreasonable determination of the facts in the light of the evidence presented in the state court proceedings.

Moreover, the 1st DCA's affirmance of the trial court's decision was not based upon an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Here, law enforcement did not do something that infringed upon Petitioner's Sixth Amendment right to counsel. Rolling v. State, 695 So. 2d 278, 290 (Fla. 1997) (per curiam), cert. denied, 522 U.S. 984 (1997). Petitioner's statements were not "deliberately elicited" from the defendant by the police and the confession was not "obtained through the active efforts of law enforcement[.]" Id. at 290-91.

According to Supreme Court precedent, it is a violation of a defendant's Sixth Amendment rights to use incriminating statements acquired by government agents who deliberately elicited the incriminating statements from a defendant after the right to counsel has attached and not been waived. Massiah v. United States, 377 U.S. 201, 204 (1964). See United States v. Henry, 447 U.S 264, 271 (1980) (finding the government interfered with the right to counsel by using an undisclosed and undercover government jailhouse informant who elicited statements from the defendant,

even if the FBI agent did not intend that the informant take affirmative steps to secure incriminating information, "he must have known that such propinquity likely would lead to that result"); Maine v. Moulton, 474 U.S 159, 176 (1985) (finding "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent") (footnote omitted); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986) (noting the primary concern of Massiah and its progeny is whether the investigatory techniques are equivalent to direct police interrogation, but recognizing the Sixth Amendment is not violated when the state obtains incriminating statements by happenstance after the right to counsel has attached).

Based on this line of cases, the fundamental question concerning whether there has been a violation of the Sixth Amendment right to counsel becomes whether the police or agent took some action beyond listening that was designed to elicit incriminating remarks.  Id. And here, more narrowly, the question before the state court was whether Ms. Holden was acting as a state agent.

Significantly,

> the Sixth Amendment right to counsel is not
> implicated "[]when, after the right to counsel
> has attached, statements by a defendant are

> made to an individual who is not an agent for
> the Government, although he may be a
> Government informant. This is so regardless of
> whether the statements were 'deliberately
> elicited'" by an informant. <u>Stano [v.
> Butterworth</u>, 51 F.3d [942] at 978 [(1995)]
> (quoting <u>United States v. Taylor</u>, 800 F.2d
> 1012, 1015 (10th Cir. 1986)).

<u>United States v. Goodrich</u>, No. 3:04-CV-1124-WKW, 2007 WL 1412393,
at *3 (M.D. Ala. May 11, 2007).

In the case at bar, Ms. Holden did not receive instructions
from the police or the prosecutors to question Petitioner about
the offenses or to inquire about his actions with the victims.
<u>See</u> <u>id</u>. at *4. At most, the record shows the detective told Ms.
Holden she could be comfortable answering Petitioner's phone calls
because he was in the police building being recorded. The
detective did not take some action designed to elicit incriminating
remarks from Petitioner. The detective did not instruct Ms.
Holden to call Petitioner and try to elicit some sort of confession
from him. Importantly, the detective did not ask Ms. Holden to
obtain any information, and the detective did not promise Ms.
Holden anything for obtaining responses from Petitioner. Finally,
the record demonstrates Ms. Holden made the phone call of her own
accord.

The 1st DCA's decision affirming the trial court's decision
is not contrary to, nor an unreasonable application of controlling

Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground. As such, ground one is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

2. This action is **DISMISSED WITH PREJUDICE.**

3. The **Clerk** shall enter judgment accordingly and close this case.

4. If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability.** [6] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of October, 2019.

_____
BRIAN J. DAVIS
United States District Judge

sa 10/15
c:
William Permenter
Counsel of Record